Sylvia G. Carmel

v.

City of Hampton

Record No. 901272

April 19, 1991

Present: All the Justices

*Elizabeth C. Wu* for appellant.
*Sally James Andrews, Deputy City Attorney (A. Paul Burton, City Attorney*, on brief), for appellee.

JUSTICE STEPHENSON delivered the opinion of the Court.

The dispositive issue in this appeal is whether a purported amendment to a city's zoning ordinance is valid.

Sylvia G. Carmel filed a declaratory judgment proceeding against the City of Hampton seeking to have the City change the zoning classification of certain property owned by Carmel.* The trial court sustained the City's demurrer and dismissed the proceeding. Carmel appeals.

The trial court considered various documents referred to by Carmel in her declaratory judgment motion. The court also received and considered other documents presented by the City to which Carmel made no objection. Consequently, even though the judgment order states that the case was decided by demurrer, in reality, all relevant facts were before the court and no material facts were in dispute. Thus, we view the trial court's decision as if the court had entered summary judgment for the City.

On May 5, 1981, Carmel purchased a parcel of real property in the City for the sole purpose of subdividing and developing it for multi-family housing. Prior to acquiring the property, Carmel inquired of the City's zoning officials about the zoning status of the property and was advised that the property was zoned R-M, which permitted multi-family development. Additionally, she examined the City's official zoning district map then in use, which indicated that the property was zoned R-M. Having satisfied her-

---

* In Carmel's prayer for relief, she not only requested a change of zoning classification but requested, "in the alternative," that she be granted a judgment for damages on a negligence theory. In view of the decision we reach on the zoning request, we do not address the alternative request for relief.

self about the property's zoning status, Carmel took title to the property.

In 1986, Carmel applied for a building permit in order to commence construction of multi-family residences on the property. The City advised Carmel that the property had not been properly rezoned from a single-family classification to a multi-family classification in 1961. The City contends that a 1961 ordinance, purporting to amend the City's zoning ordinance by changing the classification of Carmel's property, was invalid and ineffective because it was not read on two occasions and passed on two occasions by the City council. Therefore, the classification had remained R-13, which permits only single-family occupancy.

Carmel then applied to have the zoning classification changed to permit multi-family occupancy. The request, however, was denied by the council, and this litigation ensued.

The original rezoning request for the property first appeared on the City council's agenda on February 8, 1961. On that date, the council voted to return the application to the City's planning commission, requesting that a study be made of the possibility of permitting the construction of cooperative apartments upon the issuance of a special use permit.

According to the council's minutes, the proposed ordinance to change the property's classification from single-family to multi-family occupancy came before the council on June 14, 1961, for a "second reading." At that meeting, the rezoning ordinance was "approved and adopted."

In contending that, to be validly adopted, an ordinance must be read on two occasions and passed on two occasions, the City relies upon § 1-13 of the City Code. Section 1-13 provides, in pertinent part, that "[a]ll ordinances passed by the council shall be in effect from and after the second reading and passage of the ordinances." Carmel contends that the City Code requires two readings but that an ordinance need be passed only once. She asserts that the ordinance was read twice, first on February 8, 1961, and second on June 14, 1961, and passed once, on June 14, 1961. Thus, the 1961 ordinance was valid. Carmel contends, alternatively, that even if an enactment must be passed twice to become effective, any irregularity that may have existed in the adoption of the ordinance is cured by Code § 15.1-503.

Code § 15.1-503 reads as follows:

> All proceedings had in the preparation, certification and adoption of zoning ordinances by every . . . city . . . prior to January 1, 1971, which shall have been in substantial compliance with the provisions of [Chapter 11 of Title 15.1, entitled "Planning, Subdivision of Land and Zoning,"] are validated and confirmed, and all such zoning ordinances adopted or attempted to be adopted pursuant to the provisions of this chapter are declared to be validly adopted and enacted, notwithstanding any defects or irregularities in the adoption thereof.

■ Although the meaning of City Code § 1-13 is unclear, we will assume, without deciding, that it requires that a proposed ordinance be passed twice, as well as requiring two readings. Nonetheless, we agree with Carmel that Code § 15.1-503 cures any procedural defect in the adoption of the 1961 ordinance.

■ Code § 15.1-503 is a remedial statute. Remedial statutes are to be construed liberally to remedy the mischief to which they are directed in accordance with the legislature's intended purpose. *University of Virginia* v. *Harris*, 239 Va. 119, 124, 387 S.E.2d 772, 775 (1990).

■ Code § 15.1-493, a part of Chapter 11 of Title 15.1 of the Code, sets forth the requirements for preparing and adopting zoning ordinances. Nothing in that section requires that an ordinance be passed twice by a city council before the ordinance takes effect, and the City makes no claim that it failed to comply with the provisions of Code § 15.1-493. Thus, the council's actions in 1961 in relation to rezoning Carmel's property were "in substantial compliance with the provisions of [Chapter 11, Title 15.1]." Therefore, applying a liberal construction, we conclude that any defects or irregularities in the adoption of the 1961 ordinance are cured by the provisions of Code § 15.1-503.

■ We hold, therefore, that Carmel's property is entitled to a multi-family zoning classification. Accordingly, we will reverse the trial court's judgment and remand the case for further proceedings consistent with the views expressed in this opinion.

*Reversed and remanded.*

CHIEF JUSTICE CARRICO, dissenting.

In pertinent part, § 1-13 of the Code of the City of Hampton provides that "[a]ll ordinances passed by the council shall be in effect from and after the second reading and passage of the ordinances." I think this section requires not only a second reading but also a second passage before an ordinance may become effective.

Furthermore, I do not believe that one passage constitutes substantial compliance with a code provision requiring a second passage. Substantial compliance means "[c]ompliance with the *essential* requirements, whether of a contract or of a statute." *Black's Law Dictionary* 1428 (6th ed. 1990) (emphasis added). The essentiality of a two-passage requirement seems obvious — to safeguard the public against hasty, ill-conceived legislation — and I do not think the requirement should be effectively repealed by "liberal construction." Hence, I disagree with the majority that Code § 15.1-503 cures the purported defect in the 1961 ordinance.